JOHN G. AND ELEANOR E. JONES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jones v. Commissioner
Docket No. 26214-91
United States Tax Court
T.C. Memo 1994-20; 1994 Tax Ct. Memo LEXIS 22; 67 T.C.M. (CCH) 1979; January 18, 1994, Filed *22 Decision will be entered under Rule 155. P purchased shares of stock, subject to a 5-year transfer prohibition, at a bargain price from his employer. Pursuant to an arrangement between the employer and a bank, P financed the acquisition with a loan secured by the shares purchased. R determined that P incurred income 5 years after the transaction on account of the lapse of the transfer prohibitions. Ps contend that the restrictions were waived when the stock was pledged as collateral to the bank. Held: The restrictions remained in effect until the 5-year prohibition lapsed. R's determination is sustained. For petitioners: Edward N. Lerner. For respondent: John Aletta. HALPERN
HALPERN
MEMORANDUM FINDINGS OF FACT AND OPINION HALPERN, Judge: By notice of deficiency dated August 12, 1991, respondent determined deficiencies against petitioners as follows: Year
Deficiency
1972
$ 24,426
1973
3,477
1974
3,898
Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Certain issues have been conceded. The only issue remaining for *23 decision is the timing of income realized by petitioner John G. Jones on account of the lapse of restrictions affecting the value of certain shares of stock received by him pursuant to his participation in a stock purchase plan maintained by his employer, Chesebrough-Pond's, Inc. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts filed by the parties and attached exhibits are incorporated herein by this reference. Petitioners are husband and wife, who, for the years in issue, made joint returns of income, computed on the basis of a calendar year. At the time the petition in this case was filed, petitioners resided in Darien, Connecticut. *24 Petitioner John G. Jones (petitioner) was employed by Chesebrough-Pond's, Inc. (the company), from 1962 through 1970. During 1967 and 1968, pursuant to a plan entitled Stock Purchasing Plan for Officers and Administrative Employees of Chesebrough-Pond's, Inc. (the plan), petitioner was entitled to purchase shares of common stock of the company at a price determined under a formula set forth in the plan. The plan provided that participating employees could not sell, pledge, or transfer any interest in the shares they received pursuant to the plan for 5 years after purchasing such shares. The plan also permitted a legend to be placed on such shares denoting that transfer prohibition. The company's board of directors or a special committee, however, was authorized by the plan to release purchasers from the transfer prohibition. The plan also contained a limited forfeiture provision granting the company an option to purchase a participating employee's shares in the event that his or her employment was severed for any reason other than death within 1 year of the date of the purchase of such shares. The purchase price to the company under the option was equivalent to the amount paid *25 by the employee for the shares. In 1967 and 1968, pursuant to the plan, petitioner purchased shares of the company as follows: Table 1
Fair Market Value (FMV) FMV Less Purchase
Shares & Purchase Price At Time of Purchase Price of Shares
Number
Per
Per
Year
Shares
Share
Total
Share
Total
1967
2,700
$ 13.50
$ 36,450
$ 35.3125
$ 95,343.75
$ 58,893.75
1968
2,400
15.43
37,032
41.3750
99,300.00
62,268.00
To purchase those shares, petitioners entered into purchase agreements (the agreements) with the company that contained the following restriction: I will continue in the ownership of shares issued pursuant to this agreement and will not sell, pledge or transfer any interest in the same for a period of five (5) years after the date of your [the company's] acceptance hereof.
Like the plan, the agreements contained limited forfeiture provisions. Additionally, the agreements required that the shares bear a legend restricting transferability for 5 years. In the event of a conflict between the provisions of the plan and those of the agreements, the terms of the agreements were to prevail. In accordance *26 with an arrangement between the company and Chase Manhattan Bank (Chase), petitioner financed his 1967 and 1968 stock purchases by obtaining a loan from Chase. The shares purchased were pledged to Chase as collateral for the loan. Those shares could only be pledged for a value equal to the purchase price paid by petitioner. The type of arrangement entered into between petitioner and Chase had been approved by the company's board of directors. The pledged shares bore a legend restricting transferability. In 1972, petitioner sold all of the shares that he had purchased through the plan in 1967, and, in 1973, he sold such shares purchased in 1968. Shares of stock of the company purchased by petitioner pursuant to the plan in 1967 and 1968 were, when acquired, subject to restrictions that had a significant effect on their value. Such restrictions lapsed in 1972 with respect to the shares of stock purchased in 1967 and in 1973 with respect to the shares of stock purchased in 1968. OPINION In her notice of deficiency, respondent determined that petitioners had omitted from their 1972 and 1973 returns certain income realized by petitioner on account of the lapse, during those years, *27 of transfer restrictions encumbering shares of stock acquired by petitioner in 1967 and 1968. These shares had been acquired by petitioner pursuant to the plan of the company. Petitioners contend that no such income was realized by petitioner during 1972 and 1973, since the restrictions in question had lapsed in years prior thereto. The burden of proof is on petitioners. Rule 142(a). Generally, if property is transferred by an employer to an employee for an amount less than its fair market value, the difference between the amount paid for the property and the amount of its fair market value at the time of the transfer is treated as compensation that must then be included in the employee's gross income. Sec. 1.61-2(d)(2), Income Tax Regs. If such property has restrictions significantly affecting its value, however, and, if the property was transferred before June 30, 1969, then section 1.421-6(d)(2), Income Tax Regs., applies to determine the timing and amount of such income inclusion. [2]Id. Those regulations state in pertinent part: If * * * property is subject to a restriction which has a significant effect on its value, the employee realizes compensation at *28 the time such restriction lapses or at the time the property is sold or exchanged, in an arm's length transaction, whichever occurs earlier, and the amount of such compensation is the lesser of -- (a) The difference between the amount paid for the property and the fair market value of the property (determined without regard to the restriction) at the time of its acquisition, or (b) The difference between the amount paid for the property and either its fair market value at the time the restriction lapses or the consideration received upon the sale or exchange, whichever is applicable. * * *
Sec. 1.421-6(d)(2)(i), Income Tax Regs.
Pursuant to the plan, petitioner purchased shares of stock from the company at a bargain price in both 1967 and 1968. Both the plan and the agreements entered into by petitioner imposed *29 a 5-year restriction on petitioner's ability to sell, pledge, or transfer the shares acquired. Moreover, a legend to that effect was printed directly on the stock certificates themselves. In respondent's view, those restrictions significantly affected the value of the shares acquired, with the result that no income was realized by petitioner in 1967 and 1968, but that income was realized by petitioner in 1972 and 1973, when the 5-year transfer prohibitions expired. See sec. 1.421-6(d)(2), Income Tax Regs.
Petitioners have no quarrel with section 1.421-6(d)(2), Income Tax Regs. Moreover, they concede that, when first acquired, the shares here in question were subject to restrictions that had a significant effect on their value, within the meaning of that section of the regulations. They argue, simply, that any value-limiting transfer restrictions lapsed prior to 1972 and 1973, the only years here in issue, and, thus, respondent cannot prevail. Petitioners' logic is as follows: Petitioner pledged his shares to a bank (Chase) as collateral for the loans that financed the purchases of such shares. Such pledges violated the explicit terms set forth (1) in the plan, (2) in the agreements, *30 and (3) on the share certificates themselves. The pledges had been approved by the company's board of directors, as part of an optional financing arrangement the board had worked out with Chase. That logic leads petitioners to the conclusion that the directors' waivers of the transfer prohibitions, which allowed petitioner to pledge his shares as collateral, represented not a limited waiver but, rather, a general nullification of all transfer restrictions previously imposed with respect to the shares. Petitioners nevertheless concede that, from the time the shares were pledged, one value-limiting restriction remained in operation. That restriction was a limited forfeiture provision, granting the company an option to purchase a participating employee's shares if employment was severed for any reason other than death within 1 year of the stock purchase (the 1-year restriction). In the event that employment ceased within that 1 year, the company could repurchase the stock for the price initially paid by the employee. According to petitioners, the 1-year restriction alone, rather than the waived transfer prohibitions, accounts for the circumstance that the shares pledged to Chase *31 were valued, for purposes of securing their obligations, based on the purchase prices paid by petitioner, rather than on the shares' fair market values. With regard to the shares acquired in 1967, petitioners reason that, upon the lapse of the 1-year restriction in 1968, no restrictions remained in force. They reason similarly with regard to the shares acquired in 1968. Thus, as stated, they contend that income should have been recognized to them in 1968 and 1969, rather than in the years currently before the Court. Petitioners' argument, however, is long on assertion and short on support. Petitioners ask us to infer a complete waiver of the transfer prohibitions from a discrete action taken by the company's board of directors in allowing petitioner to avail himself of the stock financing arrangement established with Chase. We are presented with no evidence, however, to support the contention that, because the directors allowed the pledging of stock as collateral to Chase in furtherance of a financing program, they effectively waived all transfer prohibitions (except the 1-year restriction) with respect to the stock. Petitioners do not argue, nor on these facts would we *32 accept, that a partial waiver by the company, solely to allow a pledge to Chase for the purchase price of the stock, would cause a taxable event to petitioner, under the regulation, as soon as the 1-year restriction expired. Petitioners argue, as they must, that, following expiration of the 1-year restriction, no value-limiting restrictions remained. The record before us simply contains nothing to shed any light on the actual or intended scope of the company's waiver. At trial, petitioner explained that he was unable to locate the pledge agreements he entered into with Chase. Moreover, although petitioner testified that minutes of the company's board meetings and formal board resolutions existed on the subject of the transfer waiver with respect to Chase, no such minutes or resolutions have been produced. While we do not attribute the failure of such proof to bad faith on the part of petitioners, we are not persuaded by the available evidence that the transfer prohibitions were completely waived (following the 1-year restriction) on account of petitioner's authorized stock pledge to Chase. Indeed, petitioner testified that, had he defaulted in his obligation to Chase, *33 he did not believe that Chase would have been able to sell the pledged shares. He testified that he believed that the legended restrictions would apply to Chase. We are unconvinced that, in permitting a pledge of the shares in question, the company intended anything more than a limited waiver. Moreover, petitioners have not convinced us that, if the company's intent were so limited, local law would provide for a broader waiver. The evidence does not support the conclusion that, on account of the company's permitting a pledge of the shares in question, at the termination of the 1-year restriction affecting such shares, all restriction significantly affecting the value of the shares ended. We have found that shares of stock of the company purchased by petitioner pursuant to the plan in 1967 and 1968 were, when acquired, subject to restrictions that had a significant effect on their value and that such restrictions lapsed in 1972 with respect to the shares of stock purchased in 1967 and in 1973 with respect to the shares purchased in 1968. Accordingly, we sustain respondent's determination that petitioner incurred income upon the lapse of those restrictions in 1972 and *34 1973, respectively. Decision will be entered under Rule 155. Footnotes
1. Respondent concedes that, if she prevails, an adjustment must be made to the basis of such shares. On account of that concession, gain realized by petitioner John G. Jones in 1972 and 1973 on the disposition of those shares would be reduced. There is no argument as to that consequence and, therefore, we will not further address it.↩
2. Sec. 83, which also deals with transfers of property in connection with the performance of services, was added to the Code in 1969, and is inapplicable to transfers of property in 1967 and 1968.↩